## JOHNSON VS. ELDRED.

A court commissioner's term expires at the end of the two years for which he is appointed. He does not belong to the class of officers who hold until successors are appointed.

A judgment went by default, and a motion to open the default was denied, and the defendant took separate appeals from the judgment and from the order refusing to open the default. The order was reversed and the judgment was affirmed subject to the power of the court below to set it aside, according to the direction given on the appeal from the order. After the record of reversal was filed in the court below, the sheriff was about to sell personal property under an execution upon the judgment, when the defendant obtained an order from a person who acted in the matter as court commissioner, but whose term of office had in fact expired a few days before, staying all proceedings by the plaintiff for sixteen days, until a motion could be made in court to set aside the execution. This order was served upon the plaintiff's attorney and the sheriff before the hour of sale, and notice was at the same time served on the plaintiff's attorney of a motion to be made at the next term to set aside the execution. The sheriff proceeded to sell the property, and struck it off to a person who was notified, as soon as he bid for it, that the sheriff had no authority to make the sale, and that all proceedings on the ex-

*June Term, 1862.*

JOHNSON
v.
ELDRED.

ecution had been stayed. *Held*, that the execution and the *sale* should be set aside, the defendant having in good faith taken all the steps which he supposed were necessary to obtain a stay of the proceedings, and more especially as the judgment, though technically affirmed, was practically reversed before the sale.

APPEAL from the Circuit Court for *Crawford* County.

This was an action to foreclose a mortgage of real estate. Judgment was entered June 12, 1860, for want of an answer The judgment directed that "if the proceeds of such sale [of the mortgaged premises] be insufficient to pay the amount so reported [by the referee] as due to ·the plaintiff, with interest and costs as aforesaid, the said sheriff shall specify the amount of such deficiency in his report of sale, and that the defendant *Anson Eldred* pay the same, and that the said plaintiff have execution therefor." An application was made to set aside the judgment, upon affidavits tending to show that the defendant had a good defense, and that his omission to serve his answer in time was owing to inadvertence and "excusable neglect." This application was denied on the 28th of August, 1860, and the defendant appealed from the order denying it, and also appealed from the final judgment, to the supreme court, where, at the January term, 1861, the order was reversed, with directions to the circuit court to set aside the default upon such terms as to that court might seem just; but the appeal from the judgment being an independent appeal, and there being no error apparent upon that record, the *judgment* was affirmed subject to the power of the circuit court to set it aside "according to the directions in the former appeal [from the order], and expressly saving to the appellant all his rights upon reversing that order." 13 Wis., 482. The mortgaged premises were sold under the judgment in October, 1860, and the sheriff reported that there was a deficiency of $1930.95. The court confirmed the sale, and ordered that the "plaintiff have execution against the property of said defendant for the balance due upon said judgment." For this deficiency an execution was issued May 11, 1861, returnable in sixty days, and levied upon two hundred and fifty shares of bank stock, as the property of the defendant, *Anson Eldred*, and the sale was advertised to

take place on the 1st of June, 1861, at 3 o'clock, P. M. On

that day the defendant made application to B. Bull, Esq., as a court commissioner of Crawford county, to order a stay of proceedings in the action on the part of the plaintiff, for sixteen days, to enable the defendant to make a motion before the circuit court to set aside the execution, and Mr. Bull granted the order. This order was made upon the affidavit of one Urquhart, stating that said stock was advertised for sale, as above stated; that said stock was, about the 1st of March, 1860, transferred by the defendant to Elisha Eldred, as collateral security for a debt of $10,000, which was still unpaid; that the judgment and opinion of the supreme court on the appeal from the order before mentioned, had been duly filed in the office of the clerk of the circuit court of Crawford county, a copy of which was appended to the affidavit. The sheriff proceeded with the sale, and sold the bank stock to one H. H. Hall, for $500. The defendant made his motion in the circuit court, upon the affidavit of Urquhart and a certified copy of said opinion and judgment of the supreme court, to set aside said execution; and also moved, upon the affidavit of Rufus King and the papers therein referred to, for an order on the plaintiff to show cause why the sale of said bank stock should not be set aside. The affidavit of Mr. King was dated June 11th, 1861, and stated that on the 1st of June he served the order made by Mr. Bull, as court commissioner, staying proceedings in said cause for sixteen days, upon the sheriff who held said execution, by showing him said order about one hour before the time appointed for the sale of said bank stock, and by delivering to and leaving with him a copy thereof, and copies of the affidavit of said Urquhart, and of said judgment of the supreme court; that he served said order upon the plaintiff's attorney, O. B. Thomas, Esq., about half an hour before the time appointed for the sale of said bank stock, by showing him the original order and delivering to him a copy thereof, and of the papers on which it was founded, except that the copy of the judgment of the supreme court was not served on him until about two or three hours afterwards, and that at the time he served the order on the plaintiff's

attorney he served on him a notice of a motion to be made at the next term of the circuit of Crawford county, to set aside said execution; that said sheriff proceeded to sell said bank stock at the time appointed in his advertisement; that Henry H. Hall bid for the two hundred and fifty shares the sum of $500; that the affiant, being present, immediately gave notice to all persons that said sheriff had no authority to make any sale upon said execution, and that an order had been made and served on him, directing all proceedings on the part of the plaintiff to be stayed; that said Hall heard the affiant give said notice, and replied that if the sheriff was selling him anything without authority he should hold him responsible; that the sheriff struck off the stock to Mr. Hall for $500; that the nominal value of the stock was $25,000, and that it was worth, as the affiant believed, about $10,000. —In answer to the rule to show cause, the plaintiff read several affidavits, but as the facts stated in them relate only to the merits of the foreclosure action, and as they are not alluded to in the opinion of the court, nor by counsel in their arguments, they are omitted. A copy of the record of the appointment of Mr. Bull, as court commissioner, was introduced, showing that he was appointed on the 24th of May, 1859, for the term of two years.—Both motions were, *pro forma*, overruled on the 15th of June, 1861, and the defendant appealed.—On the 11th of June, 1861, the circuit court, upon a renewal of the motion to set aside or open the judgment of foreclosure rendered June 12th, 1860, ordered that said judgment be set aside and vacated, and that the defendant have leave to file his answer and appear and defend, &c.

*Levi Hubbell*, for appellant, contended, among other things, that the sale should have been set aside because the plaintiff's attorney and the sheriff had notice before the sale that the supreme court had ordered that the judgment obtained by the plaintiff should be vacated; and because the order staying all proceedings on the part of the plaintiff was served on the sheriff before the sale, and notice given to the *purchaser* at the time of the sale.

*O. B. Thomas* and *D. H. Johnson*, for respondents:

When the execution issued, there was no stay of proceed-

ings, and not even an appeal pending. The motion to open the judgment was pending in the circuit court, but no stay of proceedings upon that motion had ever been awarded or applied for. Where a defendant fails to apply for a stay of execution upon the proceedings to vacate a judgment, he elects to let the judgment be executed, and to resort to his remedy for restitution, if he succeeds in vacating it. 2. The stay of proceedings awarded by Mr. Bull was unauthorized because he was not a court commissioner, and because it was made without notice and out of court after judgment, and because the ulterior relief which it purported to aid had not been applied for, and no order to show cause or motion papers for such ulterior relief were served with the order. See 4 How. Pr. R., 246–8; 8 id., 39, 349; 6 id., 367; 13 id., 374; 5 Cow., 428; Tidd's Pr., 511, *et seq.*; 2 Chit. Gen. Pr., 26, 557 *et seq.*, & 583. Indeed, the agent for the appellant swears that he did not serve the principal motion paper until about three hours after the sale. See 8 Wis., 376. Mr. Bull's order was also unauthorized because he undertook to stay proceedings for a definite time. 3. The application to set aside the sale was properly overruled in the circuit court, because upon the face of it, it was made by a person having no interest in the property sold which could be affected by the sale (*Coleman vs. Spencer*, 5 Blackf., 197); and because it is contrary to the practice of our courts to try the title to property upon motion, even where the owner of the property makes the motion. 4. The application to set aside the execution was properly overruled because it was made after the execution was returned, and because no proper security was given or offered, and because it was not shown that the execution had been improperly issued, or that the levy or sale was irregular, fraudulent or oppressive. 5. The purchaser at the sale will be protected in any event, because he had no notice of the alleged irregularities of the sale, except a verbal rumor started after he had bid, and just as the property was being struck off to him. 1 Maul. & Sel., 425; Yelv., 179; 3 Bac. Abr., 420; 11 Vin. Abr., 40; 5 Barb., 565; 4 Barb., 180; 8 Johns., 361; 11 id., 513; 13 id., 97,

537; 8 Wend., 9; 1 Cow., 711; 1 Miss., 754; Coxe, 39; 2
Bibb, 202; 4 Wis., 1; 5 Wis., 443.

JOHNSON
v.
ELDRED.

September 1.

*By the Court*, COLE, J.   We consider it a matter of serious
doubt, whether the commissioner, Bull, had any authority to
stay the proceedings on the execution at the time he made
the order dated June 1, 1861.   The statute authorizes the
circuit judges to appoint, in each of the organized counties
in their respective circuits, two court commissioners, who
shall hold their office for two years from the time of their
appointment, unless removed by the judge.   Chap. 13, sec.
94, R. S.   It appears from the case that Mr. Bull was ap-
pointed by an order of court, entered May 24, 1859; con-
sequently his authority to act under that appointment had
expired.   It is not pretended that there had been any re-ap-
pointment, and we therefore cannot see how he could make
a valid legal order staying proceedings.   It is claimed, that
although the commissioner's term of office had expired, yet
he could still hold over by virtue of section 160, chap. 13,
until his successor was appointed.   We are satisfied, howev-
er, that this provision of the statute cannot, by any fair con-
struction, be held to apply to court commissioners.   For they
cannot properly be said to have any successors in office,
any more than a notary public.   This section undoubtedly
refers to the other county officers mentioned in the chapter,
who do really have successors, and who hold over until their
successors are elected and qualified, in order to avoid the
great public inconvenience which might result from a vacan-
cy in the office.   These reasons of public policy do not ap-
ply to court commissioners, or if they do, it is impossible to
hold that court commissioners come within the intent and
language of the law.   So as a matter of strict statutory con-
struction, we feel compelled to say that the commissioner
had no power to stay the sale on the execution at the time
he made the order.   But notwithstanding this, we think un-
der the peculiar circumstances of this case, the sale on the
execution should be set aside.   It does not admit of doubt
that the appellant endeavored in good faith to stay the sale.
He took all the steps which he supposed were necessary for

the purpose, by applying to an officer who, he had every reason to conclude, might grant him an order staying the proceedings. This order he seasonably served upon the proper parties. Still the sheriff disregarded the order and proceeded with the sale. He doubtless was as ignorant as any one that the commissioner's term of office had just expired. All parties were unquestionably laboring under a mistake as to the commissioner's power to act in the premises. At all events, it is very apparent that the commissioner and appellant were mistaken upon this point. Now the fact that the appellant was acting under this very natural mistake in regard to the commissioner's power to stay the proceedings, is a circumstance proper to be considered, and one which furnishes an equitable ground for setting aside the sale. He had done every thing which was deemed necessary to prevent the sale, but the commissioner's term of office had just expired. The mistake was one which the most vigilant and diligent person might have fallen into, for we suppose it rarely happens that one examines the date of the appointment of a court commissioner when he applies for an order. If the court commissioner assumes to act, it is taken for granted that he has legal authority to do so. Upon this ground, we are of the opinion that the sale on the execution should be set aside.

There is still another circumstance which greatly strengthens the merits of the application to set aside this sale, and it is this. The judgment of foreclosure upon which the execution issued, had been practically reversed before the sale was made. It will be remembered that there were two appeals in this cause. One was from an order of the circuit court refusing to set aside a default and permit the appellant to come in and defend the suit. This order was held to be erroneous, and was reversed. There was likewise an appeal from the judgment itself. As the record stood, we were compelled to affirm the judgment, but we did so subject to the power of the circuit court to set the same aside according to the direction in the former appeal, and expressly saving to the appellant all his rights consequent upon the reversal of the order denying him the right to make defense to

the action. So that while there was a technical affirmance, there was substantially and really a reversal of the judgment, when we consider the conditions upon which it was affirmed. The *remittitur* on that appeal was filed in the office of the clerk of the circuit court of Crawford county long before the sale was made under the execution. The parties must have seen upon what terms and conditions the judgment of foreclosure had been affirmed, and it is not a little strange that the respondent proceeded to make sale under it. The practice is what might be termed sharp and enterprising, quite too much so to receive the strong approval of a court of equity. And it is these peculiar circumstances which, in our opinion, entitle the appellant to have the sale upon the execution set aside. But it is said, if the sale is set aside, that the appellant is not entitled to a restitution of the bank stock sold, but must be content to receive the amount realized at the sale. This might be so had not the purchaser bid at the sale with full notice. But it seems he did. King swears that he gave notice at the sale to all persons, that the sheriff had no authority to make any sale in the action or upon the execution. We do not understand that courts go so far as to protect a purchaser who bids with full notice of the ir regularity of the sale. That Hall had such notice there is no reason to doubt. He therefore cannot retain the bank stock as against the appellant.

The order refusing to set aside the execution and the sale made under it, must be reversed, and the cause remanded for further proceedings according to law.